UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA M. PANEPUCCI,

                Plaintiff,

                                        Case No. 05-70024

vs.

                                        HON. GEORGE CARAM STEEH

HONIGMAN MILLER SCHWARTZ
AND COHN, LLP,

                Defendant.

_____/

OPINION AND ORDER GRANTING MOTION TO DISMISS

INTRODUCTION

       Before the court in this employment discrimination case filed by an attorney with

Detroit's Honigman Miller law firm is defendant's motion to dismiss, which asserts that

plaintiff, a percentage partner and not an employee of the firm, cannot bring the

asserted discrimination claims under federal statutes, and that even if the court had

jurisdiction over such claims, she waived the right to bring her claims in this court by

agreeing to arbitrate them.  Because the court finds that plaintiff signed a broad

arbitration clause, and thus agreed to arbitrate all disputes she might have with the law

firm, the court will grant defendant's motion on this basis.

BACKGROUND

       Plaintiff Lisa Panepucci joined defendant, law firm Honigman Miller Schwartz and

Cohn LLP, in 1988 upon graduating from the University of Michigan Law School.  She

was made a "nonpercentage partner" effective January 1, 1993, and a "percentage

partner" January 1, 1997.  Plaintiff alleges that she stopped working there in November

2003, after defendant's mistreatment of her caused her physical and emotional damage and created impossible working conditions.

In summary, plaintiff alleges in her complaint that female attorneys were not given the same opportunities that male attorneys were given, and that from 2001 until November 2003, plaintiff complained at various times about her level of compensation and that the firm engaged in sex discrimination.  She also alleges that she took time off work in 1999, 2000, and 2001 for infertility treatments, that her billable hours decreased as a result of her fertility problems, and that her compensation was improperly cut as a result of those decreased hours.

Ultimately, plaintiff asserts, there was a breakdown in her relationship with the firm's vice chair and head of the Attorney Compensation Committee, Alan Schwartz, which led to her inability to secure work assignments from Schwartz or other more senior attorneys with the firm.  Plaintiff alleges that as a result of stress accompanying these events, she suffered "physical and emotional consequences," ultimately "requir[ing] her to take a medical leave of absence in November 2003."  She has not returned to work with defendant.  Plaintiff filed her claim with the Equal Employment Opportunity Commission on March 9, 2004, and received a notice of dismissal and right to sue letter on November 24, 2004.  Her lawsuit in this court was filed on January 27, 2005.

Defendant has moved to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Defendant asserts that plaintiff cannot bring her discrimination claims under federal law, because she is a *bona fide* partner, rather than an employee, and in the alternative that plaintiff agreed to arbitrate those

2

claims.  Following full briefing and oral argument on the motion, the parties submitted supplemental briefing, which the court has also considered in making its determination on the motion, as set forth below.

STANDARD

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction can attack the claim of jurisdiction on its face, as alleged in the complaint, or can attack the factual basis of jurisdiction.  <u>Golden v. Gorno Bros., Inc.</u>, 410 F.3d 879, 881 (6th Cir. 2005).  When a motion attacks the factual basis of jurisdiction, the court may consider evidence outside the pleadings, and "the plaintiff has the burden of proving that the court has jurisdiction over the subject matter."  <u>Id.</u> (citing <u>DLX, Inc. v. Kentucky</u>, 381 F.3d 511, 516 (6th Cir. 2004)).

ANALYSIS

1. <u>Partner v. Employee</u>

Defendant's first argument is that plaintiff, who was labeled by the firm as a "percentage partner," *was* in fact a bona fide partner, who cannot bring a claim under a federal anti-discrimination statute[1].  Defendant cites to <u>Equal Employment Opportunity Commission v. Sidley Austin Brown & Wood</u>, 315 F.3d 696, 698 (7th Cir. 2002) for the proposition that plaintiff must be an employee, rather than a partner or employer, to make such claims.  This is not contested by plaintiff.  Rather, plaintiff's position is that she *is* an employee for purposes of making claims under those statutes, because the

---

[1]  <u>See</u> 42 U.S.C. § 2000e(f) (Title VII); 42 U.S.C. § 12111(4) (Americans with Disabilities Act); and 42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act), each of which defines the category of individuals who can bring claims as, simply, "employees," or, e.g., "individual[s] employed by an employer."

applicable "common-law agency" test for determining whether plaintiff is an employee or an employer, as set forth in <u>Clackamas Gastroenterology Associates, P.C. v. Wells</u>, 538 U.S. 440, 444 (2003), dictates that in this case the plaintiff, although labeled a "partner," is an employee.

The parties are in agreement as to the six factors the court must consider under <u>Clackamas</u> to make this determination:

    1.  Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;

    2.  Whether and, if so, to what extent the organization supervises the individual's work;

    3.  Whether the individual reports to someone higher in the organization;

    4.  Whether and, if so, to what extent the individual is able to influence the organization;

    5.  Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;

    6.  Whether the individual shares in the profits, losses, and liabilities of the organization.

<u>Id</u>. at 449-50.  As plaintiff points out, the <u>Clackamas</u> majority emphasized that "whether a shareholder-director is an employee depends on 'all of the incidents of the relationship...with no one factor being decisive.'" <u>Id</u>. at 451 (citing <u>Nationwide Mut. Ins. Co. v. Darden</u>, 502 U.S. 318, 322 (1992) (citation omitted)).

Each of the parties to this litigation discusses the six factors stated above in sequence.  After considering both arguments, the court agrees that the question of whether plaintiff is an employee is not appropriately determined on the motion to dismiss.

4

Concerning the first <u>Clackamas</u> criterion, plaintiff attests in her affidavit that she was required to comply with rules and regulations applicable to all attorneys, such as rules about vacation time and "time away from the office," whereas the affidavit of Alan Schwartz, proffered by defendant, indicates that only certain "standards," such as the conflict of interest and EEO policies set forth in the Attorney Manual apply to "percentage partners."  A reading of the Attorney Manual confirms that many regulations appear to apply to all attorneys of the Honigman firm, but the actual practice is not made clear by the evidence.  The Partnership Agreement, §6.02(b), makes clear that plaintiff, as a "percentage partner," can have her partnership terminated only via partnership vote, although the court notes that plaintiff alleges she was constructively cut off from her livelihood, through removal of her client base.

The extent to which plaintiff was supervised in her work is also disputed by the parties.  Defendant merely asserts that the attorney in charge of any particular "engagement" makes staffing and work decisions, and is the primary interface with the client, and that sometimes plaintiff had this role, and sometimes worked alongside another partner in this role.  See Schwartz Affidavit, ¶ 10.  However, plaintiff alleges, and attests via affidavit, that "as a 'percentage partner,' [her] billable hours, creditable business, work performance, and work load were reviewed and evaluated by Honigman on a regular basis."  See Panepucci Affidavit, p. 13.  As noted above, plaintiff both alleges in her complaint and attests that by November 2003, she had been effectively removed, against her will, from the representation of some long-term clients.

The above disputes also apply in considering whether plaintiff reported to "someone higher in the organization."  Plaintiff has clearly alleged that she was asked

5

by more senior partners to take on assignments, and that her performance was "evaluated and/or critiqued by a more senior 'percentage partner,' including, without limitation, Schwartz, Stahl, Parrish, Duerr, Romney, Foltyn, Kunz, Beitner and/or Weiss" through 2003.  Schwartz, on the other hand, attests only that when plaintiff was the attorney in charge of an engagement, she was the attorney with the roles discussed above.  The evidence offered in support of this motion does not disclose how often plaintiff had which role, or whether taking on a role of being in charge of an engagement was elective or assigned by a more "senior" partner.

The fourth <u>Clackamas</u> factor is whether and, if so, to what extent the individual is able to influence the organization.  Although defendant points to the partnership agreement as giving plaintiff the influence of any percentage partner, plaintiff's complaint alleges, in part, that she was discriminated against for attempting to exercise influence over the organization concerning equal rights for female attorneys.  Plaintiff attests that "[t]he provision in the Partnership Agreement requiring a two-thirds vote of Honigman's partners to terminate my partnership was a mere formality,"  that in fact partners "rubberstamp" candidates to the board, and that dissent results in adverse consequences (i.e., removal of an attorney's workload).  See, e.g., Panepucci Affidavit, p. 14.

As to the last two factors, there is no dispute that plaintiff signed the Partnership Agreement, and no dispute that, to some extent, plaintiff shared in the profits and losses of the partnership.  However, plaintiff contends that neither the firm's organization as a partnership nor her label of "percentage partner" allows defendant to avoid liability for discrimination.  Furthermore, plaintiff asserts that the firm's

6

"Attorney Compensation Committee," which determined her compensation, was able to make the determination based upon a subjective evaluation of her performance, which is more in line with compensation of an "employee" than a partner.  Indeed, plaintiff alleges, and defendant does not dispute, that her compensation was lowered by $15,000 following a year in which she sought leave for fertility treatment.  Although plaintiff alleges she contested that determination, she was not able to influence the decision.

At this juncture, the court is faced only with the pleadings, the competing Panepucci and Schwartz affidavits, the Partnership Agreement, and the Honigman Miller Attorney Manual.  As discussed above, this evidence weighs in part toward a finding that plaintiff is an employee, and in part that she had the real ability to exercise control over the organization.  The court is convinced that the answer to this question would become clear only after further discovery clarifies Ms. Panepucci's role with the firm.  Although the court notes defendant's assertion concerning the large number of cases that decided this question "on motion," rather than at trial, the court notes that many of those cases were decided on a motion for summary judgment, after the benefit of discovery.

For instance, in one of the few post-Clackamas cases directly on point here, also listed by defendant, the Seventh Circuit case of Solon v. Kaplan, 398 F.3d 629 (2005), it was determined that the plaintiff, also an attorney, was not an employee who could bring a claim under Title VII, and the court affirmed the entry of summary judgment for the partners of the firm.  However, as noted, the ruling being reviewed was one for summary judgment, and the court made its determination based on its findings,

7

including that Mr. Solon was one of only four general partners, and that Solon had been the trustee of the firm's 401(k) account and managing partner.  Id. at 633.  Solon made an argument similar to that made here, that the partnership agreement was ignored frequently by the other partners, and thus offered him no protection.  However, in that case, the court found that the evidence, amassed through discovery, showed that the "informal" process by which the other partners decided to terminate Solon's partnership did not violate the partnership agreement, nor was it breached in determinations made by the other partners concerning compensation.  Id. at 633-34.  In any event, the court's opinion clearly shows that much evidence was gathered and considered in making the determination.  In the instant case, despite the "democratic" Partnership Agreement applicable to Honigman attorneys, the court has not been given the benefit of considering evidence that will be collected during a discovery process, and is unable to find at this juncture that Ms. Panepucci was an employer.  The court thus denies without prejudice defendant's motion to the extent that it was brought on this basis.

2.  Claims Barred by Agreement to Arbitrate

        The second basis asserted by defendant's motion to dismiss is that plaintiff signed an arbitration agreement as part of the Partnership Agreement, which bars her claims pending here.  The pertinent language states that "[i]n the event of a controversy or claim arising under or related to this Agreement or its interpretation, or, in the event of an alleged breach of this Agreement which the Partnership or any Partner disputes, the parties shall submit such controversy, claim or dispute to a binding arbitration conducted by the American Arbitration Association (the 'Association')...."  Partnership Agreement, § 10.01.

8

Defendant devotes some argument to whether the agreement to arbitrate is enforceable, under federal and Michigan law, which plaintiff does not dispute.  Further, plaintiff does not dispute that the Federal Arbitration Act codifies a strong public policy in favor of arbitration of disputes.  9 U.S.C. § 2.  Rather, the parties' disagreement about this clause is whether it applies to plaintiff's claims in this litigation.  Plaintiff asserts, tracking the language of the arbitration provision quoted above, that because a) she has not made a claim arising under or related to the Partnership Agreement, b) does not claim breach of contract or c) dispute the interpretation of the contract, the arbitration clause does not apply to bar her cause of action.  Plaintiff emphasizes that the Partnership Agreement *itself* does not address the firm's equal opportunity policy, or a prohibition against discrimination, but deals only with the administrative financial and governance details of the partnership.  On the other hand, defendant asserts that because 1) plaintiff's claims include complaints about her level of compensation, and 2) the claims of gender discrimination simultaneously allege inadequate compensation in comparison to male attorneys, and 3) plaintiff's complaint includes claims concerning discontinued payments due her under the Partnership Agreement, all claims in the complaint are properly heard by the AAA and should be dismissed.

Defendant takes the position that "[p]lainly, grievances concerning compensation extend across all of Plaintiff's theories of discrimination, and the determination of a percentage partner's compensation is quintessentially a matter covered by and related to the Agreement."  The court agrees that although plaintiff's claims do not allege a dispute in the agreement's interpretation or a breach thereof, the allegations, asserting claims of inequitable compensation meted out on a discriminatory basis, "relate to" the

9

Partnership Agreement, which sets forth the method of compensation for percentage partners.

Defendant's argument is strengthened by language contained in the Partnership Agreement, e.g. that the Honigman Board shall "establish, memorialize and communicate the basic philosophies and policies by which the Partnership shall be governed, such as...standards for elevation/admission as a Percentage Partner, a billing rate philosophy, and philosophies and policies that affect the culture and mission of the Partnership." Partnership Agreement, § 5.03f(I). Defendant asserts that it is the Attorney Manual which contains these "philosophies and policies," and points out that the Attorney Manual also states its commitment to equal opportunity.

Plaintiff has pled claims under Title VII, the ADA, the Pregnancy Discrimination Act, and Michigan's Elliott-Larsen Civil Rights Act and Persons with Disabilities Act. Plaintiff does not contend that any one of these claims is inappropriate for arbitration. Upon becoming a "percentage partner," she signed a document which purported to govern the relationship of all percentage partners with the partnership. Regardless of whether that event barred plaintiff's Title VII and associated claims, it was at that juncture in plaintiff's relationship with Honigman that she agreed to arbitrate any disputes she had with the firm.[2]

Under Sixth Circuit precedent, Article X of the Partnership Agreement, entitled merely "dispute resolution," and covering any dispute arising from or relating to the

---

[2] Plaintiff does not argue, and the court thus does not address, that her waiver of the right to a judicial forum was not "knowingly and voluntarily" executed, for which the test, established in Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 668 (6th Cir. 2003), includes whether the plaintiff had an opportunity to consult an attorney.

Partnership Agreement, contains a broad arbitration provision.  See Glazer v. Lehman Bros., Inc., 394 F.3d 444, 448 (6th Cir. 2005), Cincinnati Gas & Electric Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 160 (6th Cir. 1983).  Where agreements contain such provisions, the Supreme Court has found that a "presumption of arbitrability should apply."  United Steelworkers v. Mead Corp., 21 F.3d 128, 132-33 (6th Cir. 1994).  In fact, where the arbitration clause is broad, the presumption is "particularly applicable," and the Court has held that only "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648-51 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation, Co., 363 U.S. 574, 582-83).  As defendant argues, there is no language in the arbitration provision evincing an intent of the parties to exclude claims such as those in the case *sub judice.*  Clearly defendant, in drafting an arbitration clause for a *partnership agreement*, for reasons including some discussed in the first section of the court's analysis of this motion, could not use standard compulsory arbitration language for "employees," such as that used in employment applications and employee handbooks.  It is the court's finding that the language in the Partnership Agreement is tantamount to language found to cover statutory claims in cases such as Haskins v. Prudential Ins. Co. of America, 230 F.3d 231 (6th Cir. 2000) (overruled on other grounds by Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) (en banc)), and Pennington v. Frisch's Restaurants, Inc., 2005 WL 1432759 (6th Cir. 2005) (unpublished), where employees agreed to arbitrate claims which "arise out of or relate to my employment."

In considering whether this dispute "relates to" the Partnership Agreement, it is apparent that the claims in this case cannot be resolved without consideration or interpretation of the Agreement itself.  Like the long line of cases decided in relation to collective bargaining agreements, such a finding compels the conclusion that this dispute "relates to" the Agreement, and must, therefore, be arbitrated. Defendant's motion to dismiss on this basis is, therefore, granted.[3]

<u>CONCLUSION</u>

For the reasons given above, defendant's motion to dismiss, made on the basis that plaintiff, as a partner, can not bring the federal statutory claims asserted in her complaint, is DENIED WITHOUT PREJUDICE; however, the motion to dismiss made on the basis that plaintiff agreed to arbitrate the claims brought in this litigation is hereby GRANTED, and the case is dismissed in its entirety.

---

[3] Plaintiff's supplemental brief cited to § 4 of the Federal Arbitration Act, which sets forth procedures to be followed by a United States District Court when a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement..."  That brief confusingly asserts "[b]efore providing Plaintiff with a jury trial and the other procedural safeguards and fundamental fairness to which she is entitled on the arbitration issue, this court must first determine whether it has jurisdiction, as is clear by the emphasized language in Exhibit 2...."  The second portion of the "emphasized language" concerns the court's direction, under § 4 of the FAA, to hold a jury trial on the issue of arbitration "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue..."  Because the court here has not found that a) the making of the arbitration agreement or b) the failure, neglect, or refusal to perform that agreement is at issue, this section of the FAA is not applicable here.  <u>See</u> <u>Indian Motorcycle Corp. v. Yamin Motorcycle of Houston</u>, 2003 WL 23416114, *2 (N.D. Cal. 2003) (citing <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 726 (9th Cir. 1999)).

IT IS SO ORDERED.


                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

Dated: August 9, 2005

                        CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 9, 2005, by
electronic and/or ordinary mail.


                                        s/Josephine Chaffee
                                        Secretary/Deputy Clerk

13